IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT COSMERO,                                     No. Civ. S-06-cv-276 DFL KJM

      Plaintiff,                                  Amended Memorandum of Opinion and Order

  v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and DOES 1 through 50, inclusive,

      Defendants.

     Plaintiff Robert Cosmero is suing his insurer, defendant State Farm Mutual Automobile Insurance Co., for denying his claim, thereby requiring him to pursue the claim through an arbitration proceeding.  The arbitrator resolved the claim in his favor.  Cosmero alleges that State Farm breached the covenant of good faith and fair dealing by denying the claim in the first instance.  Cosmero seeks punitive damages.  State Farm now moves for summary judgment.  For the reasons below, the court DENIES State Farm's motion.

1

I.

In 2002, Cosmero was involved in two car accidents within a span of three months.

On April 16, 2002, Cosmero was rear-ended by Roland Granados. (Def.'s SUF 3.) Cosmero settled his claim against Granados for Granados's policy limit of $15,000. (Def.'s SUF 4.) At the time, Cosmero had automobile liability insurance through State Farm. (Def.'s SUF 1.) His policy provided for per-person medical payments coverage of $5,000 and underinsured motorist coverage of $100,000.[1] (Def.'s SUF 1.) On July 18, 2002, Cosmero was in another car accident. Cosmero settled that claim for the driver's $100,000 policy limit. (Ex. 21.)

After the accidents, Cosmero began experiencing severe neck pain. On January 21, 2003, Cosmero underwent a cervical discectomy procedure to help alleviate the pain. (Def.'s SUF 8.) Cosmero incurred over $140,000 in medical fees. (Ex. J2 2.) In March 2003, State Farm paid Cosmero the maximum $5,000 of medical coverage as partial reimbursement for his neck surgery. (Bell Dec. 51:2-22.)

On August 25, 2003, Cosmero sent a demand letter to State Farm. (Def.'s SUF 6.) Cosmero claimed that the April 16 accident caused his neck injury and that the settlement with Granados did not fully compensate him for his losses. (Def.'s SUF 6.) Cosmero sought underinsured motorist coverage for neck injuries and a broken morphine pump, a device he previously had

---

[1] Underinsured motorist coverage protects insureds when they are involved in an accident where the at-fault party does not have adequate insurance.

implanted in his body to help him manage pain that lingered from prior injuries. (Ex. 2.)

Upon receiving his demand letter, State Farm informed Cosmero that it needed more time to evaluate the claim. (Ex. 4.) For the next six months, Cosmero waited for a decision. (Ex. 18 MAYAL0080.) State Farm referred Cosmero's claim to counsel, Mark Berry. (Def.'s SUF 13.) State Farm also hired its own doctor, Kavian Shahi. (Def.'s SUF 26.) Against Berry's advice, State Farm had Dr. Shahi conduct a medical examination ("IME") of Cosmero. (Def.'s SUF 28.) Berry counseled against conducting an IME because he felt that "[a]n IME will not be beneficial as [Cosmero's] surgery has already been performed and there is no current condition to evaluate." (Ex. 12 1CF0186.)

During its investigation, State Farm deposed the doctors who treated Cosmero's neck injuries. Dr. Willis testified at his deposition that he first noticed Cosmero might have suffered a neck injury on June 25, 2002, before Cosmero's second accident. (Willis Dep. 28: 16-19.) Dr. Pasquale Mantesano, who performed Cosmero's neck surgery, observed that Cosmero "had a long history of back problems." (Mantesano Dep. 11:14-15.) Dr. Mantesano reasoned that the April 16 accident "likely" worsened existing neck problems that Cosmero had and that, "as a result of both accidents, [Cosmero] ended up getting surgery." (Mantesano Dep. 11:14-12: 3.)

Various State Farm employees and representatives were aware of Dr. Willis and Dr. Mantesano's opinions. The claim adjuster assigned to the case indicated in her activity log that she reviewed Dr. Willis's deposition and noted that "Dr. Willis

feels both [accidents] contributed to the patient[']s neck pain and increased low back pain." (Ex. A. 1CF1117.) In a summary of Cosmero's medical records that he sent to State Farm, one of Berry's associates concluded that "[t]he April 2002 accident does appear to have caused him neck injury." (Ex A. 1CF0199.) In the same letter, the associate reiterated that "it appears that the April 2002 accident may have contributed to Mr. Cosmero's neck injuries addressed by his cervical fusion in January 2003." (Ex. A. 1CF0199.) In his summary of Comsero's deposition, Berry noted that "Cosmero contends that the April 2002 accident was more significant than the July 2002 accident." (Ex. 12 1CF0184.) In his pre-arbitration report, Berry, however, stated that "the underlying $15,000 that was recovered from the adverse driver is sufficient to compensate Mr. Cosmero for injuries associated with [the April 16] accident." (Ex. A 1CF104.)

On August 27, 2004, Dr. Shahi sent State Farm a report in which he concluded that the April 16 accident did not cause Cosmero any "temporary or permanent impairment." (Ex. 17 1CF0095.) Dr. Shahi arrived at this conclusion from interviewing Cosmero and independently evaluating his medical records. (Ex. 17 1CF0073.) In his report, Dr. Shahi contended that "[t]here is no evidence of cervical complaints in the reviewed records until August 6, 2003." (Ex. 17 1CF0095.) Dr. Shahi took the position that Cosmero would have felt pain in his neck immediately if he had suffered a neck injury in April 2005, but Cosmero did not complain about any neck pain in his visit to the emergency room. (Ex. 17 1CF0095.) Dr. Shahi observed that

Cosmero also stated in his deposition that the second impact "was actually harder" than the first.  (Ex. 17 1CF0095.)  Finally, Dr. Shahi noted that Dr. Mantesano discovered during surgery that Cosmero had a disc that "had calcified and partially ossified."  (Ex. 17 1CF0095.)  Because "[t]his process of calcification/ossification takes years to occur," Dr. Shahi reasoned that "the disc problem predates the accident of 4/16/02."  (Ex. 17 1CF0095.)  In his report, Dr. Shahi claimed that he reviewed Dr. Willis's and Dr. Mantesano's depositions in which they stated that they believed both accidents contributed to Cosmero's neck injuries.  (Ex. 17 1CF0091, 1CF0093.)

   Based on its investigation, State Farm determined that Cosmero was not entitled to underinsured motorist coverage. Under Cosmero's policy, Cosmero and State Farm must settle disagreements as to coverage through binding arbitration. (Def.'s SUF 2.)  The case went to arbitration in September 2004. (Def.'s SUF 33.)  On November 4, 2004, Judge Gilbert, the arbitrator, found in favor of Cosmero, and State Farm paid Cosmero the remaining $85,000 of his underinsured motorist coverage. (Def.'s SUF 36.)

                                II.

   State Farm contends that it did not act in bad faith by refusing to settle Cosmero's claim as a matter of law because it relied on the conclusions of its expert and its attorney that the April 2002 accident played no part in Cosmero's neck injuries.

   State Farm is correct that a court may find, as a matter of law, that there was no bad faith when an insurer relies on the

advice and opinions of experts to deny or delay payment of a claim. Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 348 (2001). But reliance on an expert "will not automatically insulate an insurer from a bad faith claim based on a biased investigation." Id. Even when insurers rely on experts, courts must deny summary judgment on bad faith claims when: "(1) the insurer was guilty of misrepresenting the nature of the investigatory proceedings; (2) the insurer's employees lied during the depositions or to the insured; (3) the insurer dishonestly selected its experts; (4) the insurer's experts were unreasonable; and (5) the insurer failed to conduct a thorough investigation." Id. at 348-49 (citations omitted).

In this case, a jury could find that Dr. Shahi's conclusions were unreasonable. Dr. Shahi reached his conclusions based almost entirely on his review of Cosmero's medical records and on inferences drawn from purported omissions in those records. For example, Dr. Shahi noted that Cosmero's medical records did not reflect that Cosmero showed any symptoms associated with neck injuries during his visit to the emergency room, the day after the April 2002 accident, "when the patient should have had maximal symptoms." Cosmero testified in his deposition, however, that he was fairly certain that he complained about neck pain during that visit. (Ex. C 63:22-23.) And Dr. Willis, who attended to Cosmero, stated in his deposition that he was uncertain whether Cosmero complained of neck pain because they were so focused on whether the accident had damaged Cosmero's morphine pump. (Ex. D. 19:5-23.)

6

Finally, in his review of Cosmero's medical records, Berry's associate noted that, during Cosmero's visit to the emergency room prior to the second accident, Cosmero reported a mild ache in his neck. (Ex. 13 1CF0195.) In these circumstances, a jury could find unreasonable Dr. Shahi's inference that Cosmero had no neck injury because the medical records purportedly did not make note of neck pain. The inference is contrary to Cosmero's best recollection and does not take account of Dr. Willis's explanation that the morphine pump was the focus of everyone's concern.

Moreover, some of Dr. Shahi's observations in his report are sufficiently puzzling that a jury could find that State Farm should have realized that reliance on his opinion was not justified. First, in his IME report, Dr. Shahi claimed that "[t]here is no evidence of cervical complaints in the reviewed records until August 6, 2002." But in the same report, Dr. Shahi earlier noted that he had reviewed Dr. Willis's deposition and acknowledged that Dr. Willis testified that Cosmero showed signs of having suffered a neck injury on June 25, 2002, before his second accident.

Second, Dr. Shahi also claimed that Cosmero testified in his deposition that the second impact "was actually harder" than the first. But Berry wrote in his summary of Cosmero's deposition that "Cosmero contends that the April 2002 accident was more significant than the July 2002 accident."

Third, Dr. Shahi relied on Dr. Manteseno's discovery during Cosmero's surgery of a problem disc that "had calcified and partially ossified." Dr. Shahi contended that "[t]his process

7

of calcification/ossification takes years to occur and suggests the disc problem predates the accident of 4/16/92." But even if Cosmero had neck problems before, the April 2002 accident still could have aggravated the injury. Therefore, it does not necessarily follow that Cosmero did not suffer any "temporary or permanent impairment" from the April 2002 accident.

State Farm also contends that there was a genuine dispute as to coverage because it relied on its attorney's advice. Reliance on counsel is one factor courts may consider to determine whether an insurer acted in bad faith. State Farm Mut. Auto Ins. Co. v. Superior Court, 228 Cal. App. 3d 721, 725 (1991). But reliance is proper only if the attorney's belief was "reasonably held." 16 Am. Jur. 3d Proof of Facts § 419 (2006).

As with Dr. Shahi's conclusions, a jury could find that Berry's recommendations to State Farm were unreasonable. Although he concluded in his pre-arbitration report that Cosmero had little chance of prevailing in arbitration, Berry relied on supporting statements that contradicted ones he or his associate made in previous letters to State Farm. First, Berry wrote in his pre-arbitration report that "[t]here is nothing in the medical records that would indicate that Mr. Cosmero complained of neck pain prior to the July 18, 2002 accident." In his summary of Dr. Willis's deposition, however, Berry's associate observed that Dr. Willis found on June 25, 2002 that Cosmero may have sustained a neck injury in the April 16 accident. He also concluded in the same summary that "[t]he April 2002 accident

does appear to have caused him neck injury, but this was exacerbated by the July 2002 accident."

Second, in his pre-arbitration report, Berry indicated that Cosmero felt that "the second accident was more pronounced than the first." But in his summary of Cosmero's deposition, Berry noted that, "Mr. Cosmero contends that the April 2002 accident was more significant than the July 2002 accident."

Third, Berry claimed in his pre-arbitration report that he relied on Dr. Shahi's IME to determine that there was no evidence that Cosmero complained of neck pain before the second accident. But because a jury could find that Dr. Shahi's own conclusions were unreasonable, Berry's reliance on them arguably was also unreasonable.

## IV.

Finally, State Farm moves for summary judgment on Cosmero's claim for punitive damages. For the same reasons that a jury could find that State Farm was unreasonable to conclude that the first accident had no effect at all in causing plaintiff's neck injury, a jury could also conclude by clear and convincing evidence that State Farm was guilty of "oppression, fraud, or malice" in denying the claim. Cal. Civ. Code §3294 (2007). Therefore, the court denies summary judgment on Cosmero's punitive damages claim.

////
////
////
////
////

V.

For the reasons above, the court denies State Farm's motion for summary judgment.

IT IS SO ORDERED.

Dated: May 14, 2007

                                        /s/ David F. Levi_____
                                        DAVID F. LEVI
                                        United States District Judge